The next case on the call of the document is agenda number 2, number 1, 2, 4, 5, 6, 3, People of the State of Illinois v. Jasper McLaurin. Counsel, please, Mr. Elstner, please begin. Good morning and may it please the Court, Counsel, Assistant Attorney General Edmund Elstner on behalf of the people of Illinois. This case calls for a straightforward application of Jackson v. Virginia, which asks whether all of the evidence taken together and in the light most favorable to the State would permit any rational trier of fact to convict defendant for the charge of offenses. Here, defendant was observed by a Chicago police officer, Sergeant Fraction, carrying a silver firearm across a Chicago street in broad daylight and getting into a van. In the ensuing traffic stop of that van, a second officer, Officer Rodriguez, recovered a loaded 9mm firearm underneath the van in close proximity to where defendant and only the defendant had exited the vehicle by the rear passenger door. The officer Rodriguez cleared the firearm, emptied it of a magazine loaded with ammunition, and a bullet from the chamber. This evidence was sufficient to prove the charged possessory offenses against defendant and specifically the firearm element of those offenses. The majority below erred in two fundamental ways. First, it misapplied basic standards of sufficiency review under Jackson. And second, it misinterpreted and failed to apply this Court's controlling precedent in People v. Wright regarding what may be sufficient evidence of a firearm as defined in the FOIA Act. As mentioned, sufficiency review under Jackson asks whether, considering all of the evidence, in the light most favorable to the State, drawing all reasonable inferences in favor of the State, any rational trier of fact, not just this trier of fact, any rational trier of fact, could have found the required elements proved beyond a reasonable doubt. Jackson sets a minimum baseline of evidence that's required for a conviction to be constitutionally sound. All we want to know here is was there enough evidence to convict, not whether it was the most possible evidence. Jackson doesn't require excluding all theories or hypotheses about how the defendant might have been innocent, and it's been 30 years since Illinois jettisoned the reasonable hypothesis of innocent standard. Jackson's also not concerned with scrutinizing that particular trier of facts, subjective reasoning process, and how it arrived at a guilty verdict. With regard to what's sufficient to prove a firearm as defined in the FOIA Act, this Court just two years ago determined and right that an eyewitness's testimony about viewing a gun combined with the circumstances under which the witness was able to view the gun may be sufficient, constitutionally sufficient, and satisfy the Jackson standard if the trier of fact reasonably inferred the gun was real. This doesn't mean that eyewitness's testimony is always going to be sufficient or presumed sufficient, but it does allow for that eyewitness's testimony, a single eyewitness's testimony, to be sufficient if that reasonable inference can be drawn. And here we have precisely that. Officer Rodriguez was a veteran police officer with a decade and a half of experience on the force. He testified that he recovered a loaded 9-millimeter firearm underneath the van in close proximity to where the defendant and only the defendant had exited the vehicle. He held the device. He inspected the device. He identified it as a 9-millimeter. He personally cleared the device, removing a magazine, loaded ammunition, and a bullet from the chamber. He maintained custody of that firearm until he returned to the police station, and he inventoried the firearm and the ammunition. Why was it not introduced at trial? Your Honor, the record's not clear on why it wasn't introduced. It points you to a number of pages in the record that show that, I believe it's on page 13A, it was in the arrest report that a Smith & Wesson 9-millimeter and live ammunition was recovered. On page 16, page C-16 of the record, there's an inventory sheet showing that it was. Those documents don't go to the sufficiency of the evidence. They were not introduced. That's correct, Your Honor. We see that the firearm was, in fact, recovered from the record, but we don't see why it wasn't introduced. The state did say that it was going to make it available in its answer to the defendant's discovery for inspection upon request. But ultimately, the simplest explanation for why the state didn't present it at trial is that it didn't have to. This court had already decided in People v. Washington that the firearm did not need to be presented, and subsequent Illinois appellate cases had applied People v. Washington to the firearm element as defined in the Floyd Act and said that firearms did not need to be presented at trial in order for the evidence to be sufficient that a real firearm as defined in the Floyd Act had been used or had been possessed. I'm sorry. And so the state mentioned in an argument on the motion for directed verdict and in closing argument that it wasn't required to present the firearm in order for a conviction for a firearm offense, and that's the simplest explanation for why it wasn't presented. The state simply didn't have to do it, and the firearm wasn't in dispute. Whether the firearm was real was never refuted by the defendant at trial. The only element of the offense that the defendant was disputing was his possession, not the firearm. So getting back to the testimony here, in this case, Officer Rodriguez had clearly provided testimony that this was a real firearm, and Sergeant Pratchett, in addition, provided testimony that she saw a firearm and that it matched the recovered firearm. This was far more evidence than what was offered and what this court deemed to be constitutionally sufficient in People v. Wright in order to prove a firearm as defined by the Floyd Act. A rational trier of fact could undeniably and reasonably infer from a police officer's identification of an object as a gun and the subsequent unloading of said gun that the gun was real. No further evidence was required to prove the firearm element of the charged offenses. When combined with Sergeant Pratchett's testimony that she saw the defendant carrying the gun in broad daylight across Chicago Street, and Pratchett's testimony that the firearm that Rodriguez recovered in close proximity to the defendant matched the firearm that she observed the defendant carrying, and we add in the two stipulations regarding the defendant's prior criminal record and a Floyd card having been issued, and we apply all of the Jackson's sufficiency standards, considering all of the evidence in the light most favorable to the state, and drawing all reasonable inferences in favor of the state, a rational trier of fact could have found that the defendant possessed a firearm and firearm ammunition beyond a reasonable doubt in violation in order to sustain his convictions for unlawful use of a weapon, aggravated unlawful use of a weapon, and being an armed individual criminal. Now, very briefly, I would mention that defendant would have this court believe that it can ignore the clear directive of Jackson to consider all the evidence and disregard Officer Rodriguez's testimony, but as we've mentioned, and that's based off of a handful of sentences that are cited out of context that seem to emphasize Sergeant Pratchett's testimony in moments where the trial court was commenting on the evidence. But as I've mentioned, Sergeant Pratchett's testimony was emphasized not because it was the only evidence being considered to the exclusion of Officer Rodriguez's testimony, or because it was the only valid evidence of firearm element, but because it was the best, most direct evidence of defendant's possession of the firearm, which was the entire focus of defendant's defense from start to finish. He was attempting to refute the possession element, that the gun recovered by Rodriguez couldn't be connected back to him, and it makes perfect sense that where possession was the only element in dispute, the trial court seemed at times more concerned with Pratchett's testimony and credibility to establish the possession aspect of the defense. So when we look to the verdict, when we look to the trial court's verdict here, here's what we see. We see, in that context, we see the court describe Pratchett's testimony that she observed the defendant carrying a firearm in plain daylight. We see the court describe Rodriguez's testimony that he recovered the firearm in the ensuing traffic stop. We see the court specifically emphasize the location of the gun's recovery under the van where the defendant, and only the defendant, had exited the vehicle. The court specifically emphasized that the recovered weapon matched Pratchett's description of what she saw the defendant carrying. And we see the court specifically emphasize Rodriguez's unequivocal testimony that the weapon was, quote, fully loaded and had to be unloaded. The most straightforward interpretation here is that the court at the very least considered Rodriguez's testimony, and more likely accepted precisely the state's theory of the case. Nowhere did the court make an adverse credibility determination against Rodriguez, and contrary to the lower court's characterization in paragraphs 22 and 26 of its opinion, nowhere did the trial court find that the recovered gun was somehow irrelevant or not being considered. The court highlighted various aspects of Officer Rodriguez's testimony, and there's no basis in the law to conclude that this court, that any court on sufficiency review, could simply disregard that testimony as part of all of the evidence being considered. This court is duty-bound under Jackson to consider all of that evidence, including Officer Rodriguez's testimony. We would also add that with regard to the suggestion that Wright doesn't control possessory firearm offenses, we submit that this is just an incorrect interpretation of People v. Wright, and it's an incorrect interpretation of the law. There's no law-based distinction between armed robbery with a firearm and possessory firearm offenses in terms of what evidence is valid in order to prove those offenses. We briefed at length this issue about the uniform incorporation of the FOID Act's firearm definition throughout the criminal code, and statutorily the possessory firearm language used in defining the with-a-firearm aspect of armed robbery with a firearm is no different substance than the possessory firearm language employed in the various possessory statutes. Each of these statutes uses some variation of the terms possessing and or carrying on or about one's person a firearm, and Wright even says it in paragraph 76, we are asked to assess the sufficiency of the evidence to prove that code of ending, quote, possess a firearm as defined in the FOID Act during the robbery. So armed robbery with a firearm is simply robbery plus possession of a firearm. And so when we're talking about identical elements here, the state's position is if the elements are the same, Wright should be applied the same. The Clifton Court recently recognized this out of the Second Division of the First District. Justice Mikva correctly recognized this under special concurrence. And so in this case, just to conclude, in this case, considering all the evidence, including both fractions and Rodriguez's testimony and the relevant stipulations, in the light most favorable to the state, drawing all reasonable inferences in favor of the state, a rational trier effect could have found the elements of the various possessory offenses improved beyond a reasonable doubt as required to sustain its convictions. And for those reasons, we would ask that this Court reverse the appellate decision and affirm the convictions. Thank you very much, Mr. Elstner. Mr. Greenberg? Good morning, Your Honors. I guess I see this case a little bit different than how the state views the case. I don't see it as a – Sir, could you please state your name for the record? Oh, I'm sorry. Steve Greenberg. I represent Mr. McClure, who's the appellate here. I see the case a little bit differently. I don't see this as a case where we need to revisit Jackson v. Virginia and decide how it should be applied. I see it as a case where we had an officer who gave a very sketchy description of an item that she saw. Saw someone walking down the street 50 feet away for a matter of seconds, holding an object. The way he was holding it, it looked like a gun. I saw what I thought was the barrel. I saw what I thought was the handle. I can't give you any further description of that item. The gun is later recovered underneath the van that the defendant was seen getting into and was seen getting out of. She can't say – she gets asked. She can't say that that's the same thing she saw him carrying. So the court rightfully, in my reading of the evidence – and I didn't try this case, so I'm relying on the transcript just as you are – the court rightly analyzed the case in the absence of a recovered firearm because no one could ever say that they saw the defendant carrying the firearm that was recovered. Equally important, the van is surrounded by cops, and the doors of the van, they don't slide open. They open outwards, unusual, not like a typical van where they slide. The defendant is out of the double doors in the back of the van, and no one sees him drop anything, throw anything, toss anything, kick anything under the car. There's simply no reason to believe that the weapon that was recovered under the car was the same weapon. And that's how the court looked at it. It's on page 69 of the transcript, CC69. Could you put this in the context of our standard of reasonable doubt, sufficiency of evidence? That's what you're arguing, right? That there was – no, there is a reasonable doubt, that this evidence was sufficient to prove beyond a reasonable doubt, correct? Correct. And the standard that we have to apply here is, of course, is very, very high. And could you engage that? Sure. And that's what I was driving at. The judge specifically says, in the absence of a recovered firearm. So then you have to look at Ross, this court's decision on Ross, and what this court found was sufficient in Ross, where you say you have to focus on the objective characteristics of the object. Here, what the state is doing is the state is saying you should focus on the subjective, that some officer with 12 years of experience said that she thought it was a firearm, because you can't consider the firearm under the van. So she thought it was a firearm based on the color, based on the way it was being carried. No description of size, revolver, semi-automatic, caliber, none of that is there. And if you look at this court's decision in Ross, it's the specificity of the proof, it's the detail that rose to the level that satisfied the burden of proof beyond a reasonable doubt. In Ross, color wasn't enough, size wasn't enough. I think the fact it was a metal object wasn't enough. So we have to look at what is the level of proof. Mr. Greenberg, let me ask you about that level of detail. Is it your position that the definition of firearms set forth in the Floyd Act is incorporated in every criminal offense involving a firearm? Yes, Your Honor. The color court seems to agree with you on that. It's our position that the decisions that this court, frankly, has rendered where the court has said that you don't have to prove a firearm is a functioning device with gunpowder and all of that is required by the statutes are wrongly decided. And, in fact, if the legislature wanted the courts to just say it's a firearm, just look at it like any other proof, like identification or anything else, based on just a matter of credibility without any scientific testing, then the remedy is for the legislature to remove that definition and to go with the Webster's definition. So under that standard that you're supportive of and the appellate court is supportive of, that presumably would require every firearm to be introduced at trial or tested by a lab to establish that it's designed to expel a projectile. Right. That's absolutely correct. And that's because the standard, the legislature has incorporated this standard into the criminal code and has said this is what a firearm is. And they've distinguished it. They've also said what a firearm isn't. There are items that can be mistaken for firearms. A BB gun could be mistaken for a firearm. A fake gun could be mistaken for a firearm. So the legislature has said that we're going to increase the penalty for having a firearm in many, many offenses. We're going to impose quite severe penalties for this. I think that it makes sense that in those cases that then the level of proof, I'm not talking about the burden of proof, I'm talking about the level of proof that's required, be greater and comply so that you can be certain before someone's going to get an additional 15 years for possessing a firearm during an armed robbery offense, they should be absolutely certain it was a firearm they possessed and it wasn't an aggravated robbery. Can we go back to the sufficiency of the reasonable doubt standard? Sufficiency challenge is what we have here. And the question is whether any rational prior effect could have found the required elements of the charge crimes beyond a reasonable doubt. All reasonable inferences from the evidence must be drawn in the state's favor with the same standard applying whether the evidence is direct or circumstantial. And that's the standard that we're looking at, that we have to apply. So we have testimony of a police officer who says, I know about guns, I've seen guns, and I saw this person with a gun. And then you have the testimony of the other police officer saying, he stepped out of the van and underneath the van we recovered a gun that had bullets in it. Why don't those reasonable inferences know that all of that is true? Because the trial court didn't take the testimony of the officer, it's clear from the transcript, who found the gun under the van and factor that into the trial court's finding. And I think it's quite clear if the court had done that, it would not have had to mention Washington Wright, another case that the court didn't name, but where it had found someone guilty in an armed robbery of having a weapon. So the trial court didn't consider that testimony, which was correct. Nobody ever saw Mr. McLaurin with the weapon that was found under the van. How did that weapon get there? It's an inference, correct? I mean, isn't the state relying on inference? And maybe your question is whether it's reasonable or not. The person who had a gun got into the van, doesn't have a gun on him when he's taken out of the van, and there's a gun below where he stepped out of the van. That's an inference, correct? Well, let's take the opposite inference. He didn't have a gun on him when he got in the van, and she was mistaken by what she saw. How did this gun get under the van? That's the question. The trial court at one point says maybe there was a secret hatch in the van. I mean, I think it's reasonable to presume that the van was made of metal. And so the gun didn't travel through the metal. Nobody said that they saw Mr. McLaurin get out of this vehicle with the gun, just as nobody said they saw the other two gentlemen get out of the vehicle with the gun. So why is it? So you're saying these are unreasonable inferences. Yes, that's exactly what I'm saying. And I think the trial court rejected that inference because there was no explanation as to how that gun got there. No one heard a noise. No one saw a kicking motion. No one saw anyone handling anything. So the objection isn't that they didn't admit the gun. It's more than that. It's that they should have to admit the gun. They should have to. Unless someone stipulates to it, they should have to prove that a gun, I'm not saying they necessarily have to bring the physical item because we don't often make the prosecutors do that. They can show a picture or whatever. But they should have to prove that it fits the definition of what is within the Firearm Act, the FOIA Act. They should have to prove that. In this case, there are sort of two issues. One is they give you two accounts. So that's a matter of proof. You cannot convict someone of this offense without doing that. And if the court feels that some of the other precedent should apply in these cases, that we feel shouldn't, like Wright and Washington and so forth, then the second part of that is that the gun under the vehicle wasn't ever identified as the same weapon that she claimed she saw Mr. McLaurin carrying, and no evidence was introduced of that in the trial judge. So you have two arguments then. You have the legal argument on the one that I asked you the question on, the FOIA card and employing the definition in all cases and maybe finding Wright wrong in finding that, yes, in the circumstantial evidence. And then you have a plain old evidence not sufficient to convict argument, right? Correct, correct. And they both play into this court's precedent because under Ross, this is almost identical to what this court analyzed in the Ross case. And the lack of evidence in that case. I think that it's a dangerous – I know we all believe guns are bad, and no one, I think, advocates for people to have guns on the streets of Chicago. But we have to understand that the law is – it's going to open the floodgates if we just say any time someone says they saw an object and I know what a gun looks like and I thought that was a gun, you can convict someone of these crimes. The legislature has made this a foundation. But you're saying that statement alone is insufficient? Yes. If someone said, whether it's in an armed robbery situation, whatever it is, if someone says I saw this, that is not sufficient. Is that what you're saying? That is not sufficient under the law because the legislature has chosen to identify specific requirements for what is a firearm. Now, if that didn't exist – So we have in the Wright case, the gentleman says he put a gun to my head, I'm a veteran, I know a lot about guns, I felt it against my head, it was a gun. You're saying that's incorrectly decided because that's not an appropriate inference. I'm saying that's incorrectly decided under Illinois law because the law says that a firearm is a specific item and they need to present that other evidence. Now, they could have asked that veteran, you know, what else did you know? Well, I recognize it, I know that it was this caliber. I mean, you can make that conclusion in other ways. I don't know that you necessarily have to have scientific testing because the law says capable of doing these things. It doesn't say that it has to be a functioning item that does these things. But I think that under the law, the legislature has made this determination and this court's precedent is wrongly decided to just ignore that. They could have done it otherwise and they didn't. So we can't just, you know, in all sorts of areas they define things. They define what is a certain item and we have to follow that. That's their policy. Is there any other case that you know of where the definition of firearm is set forth in the Floyd Act, is mandated to be incorporated in every criminal offense? Involving a firearm? I'm sorry. Involving a firearm. I didn't follow. Your whole Floyd Act argument, the definition of Floyd Act, has to be employed in criminal cases involving a firearm. Are there any cases holding that? Would this be the first to indicate that that definition has to be employed in a case like this? I think there are cases that say that it doesn't have to be. I think that those cases are wrongly decided. Yes, this would be the first case. But if the Clifton Court struggled with this, why shouldn't the requirement that the legislature has set forth apply? Why shouldn't it? I mean, that's the problem is that when you try a case like this and the government doesn't do something, the state doesn't have this scientific evidence, should they be able to say let's take it to a cocaine case? Should they be able to say I looked at the white powder. I know they can do this for a search warrant for maybe a probable cause standard, but I looked at the white powder. I know what cocaine looks like. I'm experienced with cocaine, and that was cocaine, and it looked like 10 grams of cocaine were sitting on the tray. They can't do that because it's a scientific question. And what other area of the law? What about the witness who says, that's the man who robbed me. I'll never forget his face. That's eyewitness testimony. It can be challenged. What was the lighting? How far away were you? All of those kind of things. But is that evidence sufficient to convict that person? And then they identify him in court. That's the man who robbed me. I'll never forget his face. Yes, because the legislature hasn't said that to make an identification in a criminal case, you have to have these elements. If the legislature were to enact a law that said, and forgetting whether it's infringing on the court's role or whatever, but just as a hypothetical, if the legislature were to enact a law that said that in order to make a credible identification in a criminal case, the witness must be able to give height within 2 inches, weight within 10 pounds, race, hair color, and eye color, then that would be the law, and everyone would be duty-bound to follow that. And that's essentially what they've done here. The remedy, if people don't think that they should have to prove that it is a functioning firearm under the law, then the remedy is to change the law. It's not a... No, you're saying that unless the gun is recovered, analyzed, and admitted that that's insufficient proof under whatever kind of case, possession or the right case, the armed robbery, put a gun to my head, I know guns, it's your fault. I didn't even say that. It was a gun that was against my head. That case would fail under your theory. Under my theory, it would fail. If they were to ask more questions, it might not. The person could describe the gun in enough detail to satisfy the FOIA requirements. So, in other words, if the person could say, I'm familiar with the gun, I know that it's a gun capable of firing, and so on and so forth. Circling back to the facts here, though, under any scenario, even under the right case, there's not enough here because all you have is, I was carrying, saw an object being carried, it was silver and it looked like it had a barrel and it had a handle. It doesn't have any further detail, which brings us back to Ross. Didn't Officer Rodriguez testify that it was a 9mm? He unloaded the ammunition, he looked at the gun? He did, but the trial court didn't consider that. The trial court was very specific that it was deciding the case based solely upon the testimony of Officer Fraction, and it wasn't giving any weight to the gun that was recovered because no one says that the gun was recovered from Mr. McLaurin. And Sergeant Fraction, when she got asked, could not say that that was the same weapon. What did she say in response to that question? She said it might be, and that's not proof beyond a reasonable doubt. Her exact wording was, it kind of looks like it or something like that. But she certainly wasn't unequivocal that it was the same item. No one asked her specifically, is that the same item, or to clarify it. They moved on from that. You have to presume that the state went through this with her when they were preparing her to testify before trial. Mr. Greenberg, is there any reason why Officer Rodriguez's testimony cannot be considered by this court? Because it's obvious that it wasn't considered by the trial court, and I don't think that this court sits here and completes de novo review and just reweighs all of it. The trial court observed the witness. The trial court decided quite clearly not to give any weight to that testimony. Even if this court wants to consider that testimony, I know I'm being redundant, but where did that gun come from? Because there's nothing tying that gun to Mr. McLaurin. Had Sergeant Fraction said, it looks identical to what I saw Mr. McLaurin walking down the street from 50 feet away. It looks identical to that. Then I think the court would have said, okay, they see this, they see this. I don't know how it got there. It might be a little bit of a closer call, but no one sees Mr. McLaurin with that weapon. There's not a single witness in this case that says, that gun that was recovered under the car looks like the weapon or is the weapon I saw Mr. McLaurin with. And there's no fingerprints or DNA. They said that they carefully preserved it so they could get fingerprints and DNA off it, and then they never sent it. Mr. Greenberg, you haven't been arguing that the appellate court was right to distinguish between an armed robbery case and proof of a firearm and a UW possession of a firearm. You mentioned it in your brief, but you haven't argued that. Well, I think that the appellate court was following this court's precedent, which says that in an armed robbery case, a witness's, again, unequivocal testimony that it was a gun is sufficient. It's our position that even in an armed robbery case, that's incorrect, but I understand that's this court's precedent. Then the court went and said, even under that, there's not enough proof here to find that. You know, I don't have to sort of tackle the armed robbery. I don't know that this court, in order to grant relief to Mr. McLaurin, has to reverse its existing precedent. The question is, is this court going to extend it, frankly, and just open the doors on all possessory gun offenses and say we're just going to whole-handed ignore the legislative grounds? Are there any other questions? Thank you very much, Mr. Greenberg. Mr. Elsner? Just a couple of points, Your Honor. Contrary to defendant's suggestion, this is a basic Jackson v. Virginia case where we need to consider all of the evidence and ask whether any rational trier of facts could conclude that the defendant was guilty of the charged offenses. Could any rational trier of facts have connected the dots in this case? Absolutely. The dots are that someone slipped what was indisputably a firearm under the van, and just because one of the officers didn't personally see it happen doesn't mean that that's not a reasonable inference of what occurred here. The court's mention of the absence of a recovered firearm is clearly, when read in context, is clearly referring to the absence of the physical firearm being entered into evidence here, not a lack of firearm testimony or a suggestion that the court was rejecting full-stop Rodriguez's testimony. This court can comb the record, and I would urge it to do so, and it will find that a conclusion that Rodriguez's testimony was not being given any weight was never made, ever, by the trial court. The trial court had moments before it reached its guilty verdict had just summarized Officer Rodriguez's testimony. It never said after that, but I'm not considering any of that testimony, and it never said I'm not giving any weight to that testimony or that Officer Rodriguez is incredible. I would also note that with regard to Officer Fraction's testimony, she, contrary to the defendant's suggestion, she did not equivocate whatsoever throughout her testimony. She says no less than 10 times that this was a gun, and she says, I observed the defendant, quote, exit the apartment building carrying a silver handgun. She says, that's on page 12 of the record, on CC-12, she says, at CC-14, she provided dispatch with a, quote, description of the person that I saw get into the van with the handgun. On the CC-20 question, you indicated you saw that he was holding a gun in his hand. The answer, correct. It goes on and on. On page CC-21, on pages, I mean, throughout her testimony, and with regard to her testimony about whether the firearm that she observed the defendant carry matched Rodriguez's description, she was also unequivocal in that testimony. At CC-16, she says that the handgun that Rodriguez recovered was, quote, the same color and size of the handgun I saw the gentleman enter the van with. And on CC-25, again, again, it was the same size and color of what I saw in the defendant's hand, yes. So fractioning, a sergeant fraction was not equivocating about maybe it was or wasn't a match. With regard to this court's decision, People v. Ross, the issue in that case was that a reasonable inference, a reasonable inference that the object in that case was a gun, could not be drawn because there was conclusive evidence that it was a BB gun. That was the issue there. There are cases where a reasonable inference that a firearm is real could be made based on an eyewitness's testimony alone. And that's exactly what this court decided in People v. Wright. The defendant says that the state should have to admit a gun in every firearm case statewide. But that's what defendant prefers the law to be, not what the law is. This court decided this issue. It settled law. It decided that two years ago in People v. Wright, with regard to what evidence may be sufficient to prove a firearm, as defined in the Boyd Act. And nothing in the intervening two years has changed about the statute that would require this court to depart from stare decisis. There's no special justification here to cause a compelling reason that the defendant has identified to depart from right, to overturn it, and create a categorical rule that firearms can never be proved by eyewitness testimony. And, indeed, eyewitnesses are capable of visually identifying physical objects, such as a firearm, explaining how they were able to, providing the circumstances of how they were able to identify that object as what it appeared to be. And that was decided in Wright in the context of guns. But this court has also decided that in the context of schools in People v. Hardin, in the context of churches in People v. Newton, that eyewitness testimony can be sufficient to prove that an object is what it purported to be. And in Wright, in particular, the court said that three eyewitnesses' testimony regarding seeing the handle of a firearm was enough to prove that this was a real firearm, where they stated that they believed the firearm was real, and they provided context for that belief, what their experience was with firearms. And it wasn't a lot of experience that was required. One of the eyewitnesses said that he had shot guns before. This was a restaurant manager, not someone trained with firearms. One of the eyewitnesses was, two of the other eyewitnesses were servers, and one of them just said, I've seen guns before. So that was enough in People v. Wright. And here we clearly have more than that. We have the testimony of two officers training with guns, one of whom saw a defendant walking down the street in plain daylight, carrying a firearm, and we have, in the ensuing traffic stop, a second officer who recovered a firearm in direct proximity to the defendant, and only the defendant could exit the vehicle. He unloaded the firearm. He identified it as a 9mm, and that was sufficient to prove the firearm element of these charge-possessory firearm offenses, and, more importantly, possess all the elements of the possessory firearm offenses. And so, unless there are any further questions, the State would ask that this Court reverse the decision of the appellate court and confirm the defense. Thank you, Mr. Elsner. Case number 124563, the people of the State of Illinois v. Jasper McLaurin, will be taken under advisement as agenda number two. Thank you, Mr. Greenberg and Mr. Elsner, for your arguments this morning.